UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| ROSE DESIA, TRUSTEE OF THE : <br> BARBARA BESS TRUST, : <br>     Plaintiff, : <br> : <br> v. : <br> : <br> GE LIFE AND ANNUITY : <br> ASSURANCE COMPANY et al., : <br>     Defendants. : <br> : <br> GE LIFE AND ANNUITY : <br> ASSURANCE COMPANY, : <br>     Defendant and : <br>     Third-Party Plaintiff : <br> : <br> v. : <br> : <br> CHRISTOPHER COUTURE, individually and : <br> in his capacity as Executor of the Estate of : <br> Barbara Bess, et al., : <br>     Third-Party Defendants : | CIVIL ACTION NO. <br> 3:05-cv-1395 (JCH) <br><br> MARCH 26, 2007 |

**RULING RE: PALOZZI AND BENNETT'S, A.G. EDWARDS & SONS'S, INC., AND SAVIANO'S MOTIONS TO DISMISS [DOC. NOS. 59, 78, and 93]**

Plaintiff Rose DeSia, as Trustee of the Barbara Bess Trust, has brought this action against the defendants, GE Life and Annuity Assurance Company ("GE") and A.G. Edwards and Sons, Inc. ("A.G. Edwards"), alleging breach of contract with respect to two annuity contracts. Subsequently, GE filed a third party complaint against, *inter alia*, Marilyn Bass Bennett, Betsy L. Palozzi and Edward S. Saviano.

Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), A.G. Edwards has moved to dismiss DeSia's Amended Complaint for lack of standing and failure to state a claim upon which relief can be granted. Bennett and Palozzi have

moved to dismiss GE's third-party Complaint for lack of personal jurisdiction pursuant to Federal Rule 12(b)(2). Saviano has also moved to dismiss GE's third-party Complaint for lack of personal jurisdiction.

## I. BACKGROUND[1]

### A. Parties

DeSia is a citizen of New York and the Trustee of the Barbara Bess Trust. GE is a corporation duly organized and existing under the laws of Virginia, with its principal place of business in Richmond, Virginia. Saviano has a place of business in New York and was one of the principals of the law office of Saviano & Tobias, P.C. A.G. Edwards is a corporation duly organized and existing under the laws of Missouri. Bennett currently resides in California and was a named beneficiary under the two annuities at issue in this case. Bennet also received a portion of the proceeds of the annuities. Palozzi resides in New York. She was also a named beneficiary under the two annuities at issue in this case and received a portion of the proceeds of those annuities.

### B. Facts

On January 2, 1997, GE issued two annuity contracts to Dr. Barbara E. Bess, an alleged resident of New Haven, Connecticut, in consideration of the variable annuity applications submitted by Bess, all the conditions and terms set forth in the contracts, and the payment of the premiums specified in the contracts. James Stewart, Bess's financial consultant and an employee of A.G. Edwards in its branch office in Farmington, Connecticut, brokered the sale of the annuity contracts to Bess. At the

---

[1]The following facts were taken from GE's third party Complaint.

time, Bess maintained non-discretionary securities accounts at A.G. Edwards.

More than two years later, Stewart visited Bess at her home in New Haven Connecticut on August 15, 1999. During Stewart's visit, Bess signed two change of beneficiary forms concerning her annuity contracts with GE. Both forms requested that GE change the beneficiary designation on the contracts to "The Barbara Bess Trust." Stewart witnessed Bess sign both forms. The Barbara Bess Trust was created for the sole benefit of Julius Solomon, Bess's longtime companion. On August 26, 1999, A.G. Edwards faxed the beneficiary change requests to GE for both of the annuity contracts. The very same day, Bess died at Yale New Haven Hospital in New Haven, Connecticut.

On January 18, 2000, Saviano sent a letter to GE stating that he represented the Estate of Barbara Bess. Saviano also informed GE that he had been Bess's attorney prior to her death. Saviano's letter went on to state that the change of beneficiary forms submitted to Bess on August 26, 1999, had been mistakenly completed, and that Christopher Couture, a New York resident who was the executor of Bess' Estate, believed that the beneficiary changes should not have been made. With this letter, Saviano enclosed an affidavit signed by Stewart in which Stewart stated that he had mistakenly prepared beneficiary change forms for the annuity contracts.

On March 10, 2000, Saviano's business partner, David Tobias, wrote two letters to GE asking that the proceeds of both annuities be paid to Bennett and Palozzi, who were the original beneficiaries of the annuity contracts prior to the August 1999 changes. Both letters were accompanied by affidavits from Couture and Peter J. Oster, the Vice President of A.G. Edwards Trust Company ("A.G. Edwards Trust"), a subsidiary of A.G. Edwards. Both affidavits corroborated the claim that the beneficiary

3

designations under the annuity contracts were erroneously changed by Stewart from Bennet and Palozzi to The Barbara Bess Trust.  The affidavits further asserted that the proceeds of the annuity contracts should be paid to Bennet and Palozzi in accordance with the previous beneficiary designations.  Lastly, Couture and Oster swore in the affidavits that neither the Trust nor the Estate of Barbara Bess would assert a claim to the proceeds of the annuity contracts if those proceeds were paid to Bennett and Palozzi.  GE subsequently agreed to pay the proceeds of the annuity contracts to Bennet and Palozzi.

On April 10, 2000, GE received letters from both Bennett and Palozzi requesting that sixty percent of their shares of the proceeds of the annuity contracts be paid to the Estate of Barbara Bess, with the remainder of their shares being paid to them according to certain payment options they had elected.  A little over two weeks later, GE paid the full contractual amounts owed on the annuity contracts to the Estate of Barbara Bess, Bennett, and Palozzi, pursuant to Bennett's and Palozzi's requests.

## II. BENNET AND PALOZZI'S AND SAVIANO'S MOTIONS TO DISMISS FOR LACK OF PERSONAL JURISDICTION

As stated above, third-party defendants Bennet and Palozzi and third-party defendant Saviano have both moved to dismiss GE's third-party complaint for lack of personal jurisdiction.

### A. Legal Standard

"On a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of showing that the court has jurisdiction over the defendant."  Met. Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560, 566 (2d Cir. 1996).  "Where a court

relies on pleadings and affidavits, rather than conducting a 'full-blown evidentiary hearing,' the plaintiff need only make a prima facie showing that the court possesses personal jurisdiction over the defendant." Distefano v. Carozzi North America, Inc., 286 F.3d 81, 84 (2d Cir. 2001). "A plaintiff can make this showing through his own affidavits and supporting materials containing an averment of facts that, if credited . . . would suffice to establish jurisdiction over the defendant." Whitaker v. American Telecasting, Inc., 261 F.3d 196, 208 (2d Cir. 2001)(quotation marks omitted). All allegations are construed "in the light most favorable to the plaintiff and doubts are resolved in the plaintiff's favor." Id. (quotation marks omitted).

"In diversity or federal question cases the court must look first to the long-arm statute of the forum state . . . ." Bensusan Restaurant Corp. v. King, 126 F.3d 25, 27 (2d Cir. 1997). "Connecticut utilizes a familiar two-step analysis to determine if a court has personal jurisdiction. First, the court must determine if the state's long-arm statute reaches the [defendant]. Second, if the statute does reach the [defendant], then the court must decide whether that exercise of jurisdiction offends due process." Bensmiller v. E.I. Dupont de Nemours & Co., 47 F.3d 79, 81 (2d Cir.1995).

1. Jurisdiction under Connecticut's Long-Arm Statute

Connecticut's personal long arm statute provides, in pertinent part:

> As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any nonresident individual, foreign partnership or foreign voluntary association, or over the executor or administrator of such nonresident individual, foreign partnership or foreign voluntary association, who in person or through an agent: (1) Transacts any business within the state . . .

Conn.Gen. Stat. § 52-59b(a).

## 2. Jurisdiction Under the Due Process Analysis

"The due process test for personal jurisdiction has two related components: the 'minimum contacts' inquiry and the 'reasonableness' inquiry." Metropolitan Life Ins. Co. v. Robertson-Ceco Corp, 84 F.3d 560, 567 (2d Cir. 1996). To accord with the demands of due process, a non-resident defendant must have "certain minimum contacts" with the forum jurisdiction "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" International Shoe Co. v. State of Wash., Office of Unempl. Comp. and Pl., 326 U.S. 310, 316 (1945). "Due process requires that the foreign defendants either have engaged in continuous and systematic activities in the forum or that they have purposefully directed their activities at residents in the forum and the litigation results from alleged injuries that arise out of or relate to those activities." FDIC v. Milken, 781 F.Supp. 226, 229 (S.D.N.Y. 1991) (citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985)). The "'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts." Rudzewicz, 471 U.S. at 475.

Nonetheless, "[s]o long as it creates a substantial connection with the forum state, even a single act can support jurisdiction." Id. at 475 n.18 (citing McGee v. International Life Ins. Co., 355 U.S. 220, 223 (1957)). The "reasonableness" test is related to the minimum contacts analysis and "asks whether the assertion of personal jurisdiction comports with 'traditional notions of fair play and substantial justice' – that is, whether it is reasonable under the circumstances of the particular case." Metropolitan Life, 84 F.3d at 568 (quoting Int'l Shoe, 326 U.S. at 316).

## B. Bennett and Palozzi's Motion to Dismiss for Lack of Personal Jurisdiction

GE claims that it has made out a prima facie case that Connecticut's long arm statute and the tenets of due process permit this court's exercise of jurisdiction over Bennett and Palozzi. GE argues that its causes of action arose from business transactions that Bennett and Palozzi conducted in Connecticut through their agents. Specifically, GE contends that Stewart, Couture, and Saviano worked together to convince GE to reverse the beneficiary change forms that Bess signed on August 15, 1999. According to GE, these three were acting as Bennett and Palozzi's agents when they caused the annuity contracts to be paid to Bennett and Palozzi. The supposed "centerpiece" of this effort was Stewart's affidavit, which GE claims was primarily responsible for persuading it that Bennett and Palozzi were the rightful beneficiaries under the annuity contracts. Stewart, who is based in Connecticut, signed this affidavit in Hartford, Connecticut.

Relying on their affidavits, Bennett and Palozzi assert that neither of them had an agency relationship with anyone actively involved in the Estate, nor engaged in any conduct that could be considered a transaction of business in Connecticut. Def. Reply at 3-6. Bennett and Palozzi's primary objection to GE's attempt to make out a prima facie case is that GE has not averred facts sufficient to allow an inference that this court may properly exercise personal jurisdiction.

The court disagrees. Bennett and Palozzi never take issue with GE's assertion that, if Stewart, Couture, and Saviano acted as agents in convincing GE to alter the

7

beneficiary forms, and if Stewart's execution of his affidavit was a key business transaction in this effort, this court could exercise personal jurisdiction.  See Gyadu v. Hartford Ins. Co., 283 F.Supp.2d. 740, 745-46 (D.Conn. 2003).  Construing all allegations in the light most favorable to GE, this court finds that GE has averred facts which, if credited, would reasonably lead to the conclusion that this court has personal jurisdiction over Bennett and Palozzi.  The court denies Bennett and Palozzi's Motion to Dismiss (Doc. No. 59) on this ground without prejudice to renew upon development of the record and further legal argument.

### C. Saviano's Motion to Dismiss for Lack of Personal Jurisdiction

Saviano's Motion to Dismiss stands in much the same posture as Bennett and Palozzi's motion.  GE asserts that Saviano solicited Stewart's affidavit and then forwarded that affidavit to GE.  Should this allegation prove true, the court finds that it would have personal jurisdiction over Saviano.  Thus, the court denies Saviano's Motion to Dismiss (Doc. No. 93) on this ground without prejudice to renew upon presentation of further facts and legal argument.

## III. A.G. EDWARDS'S MOTION TO DISMISS FOR LACK OF STANDING AND FAILURE TO STATE A CLAIM

As previously noted, A.G. Edwards has moved to dismiss the Amended Complaint (Doc. No. 70) for lack of standing and failure to state a claim upon which relief can be granted.  Because the court finds that Desia states a claim for relief against A.G. Edwards, the court denies A.G. Edwards' motion.

### A. Legal Standard

A.G. Edwards' challenge to Desia's standing to bring this suit is properly brought

under Federal Rule 12(b)(1). Under Rule 12(b) (1), the court dismisses a complaint for lack of subject matter jurisdiction when it lacks constitutional authority to adjudicate the suit. Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000). Because standing concerns whether a complaint presents a "case or controversy" upon which a federal court can exercise its Article III powers, it is an appropriate matter to consider on a motion to dismiss for lack of subject matter jurisdiction. Auerbach v. Board of Educ. of the Harborfields, 136 F.3d 104, 108 (2d Cir. 1998). In assessing a motion to dismiss for lack of subject matter jurisdiction, the court "accept[s] as true all material factual allegations in the complaint," Shipping Fin. Serv. Corp. v. Drakos, 140 F.3d 129, 131 (2d Cir.1998) (citing Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). However, the court refrains from "drawing from the pleadings inferences favorable to the party asserting [jurisdiction]." Id. (citing Norton v. Larney, 266 U.S. 511, 515 (1925)).

On a motion to dismiss pursuant to Rule 12(b)(1), the plaintiff must establish by a preponderance of the evidence that the court has subject matter jurisdiction over the complaint. Makarova, 201 F.3d at 113; see also Malik v. Meissner, 82 F.3d 560, 562 (2d Cir.1996); In re Joint E. & So. Dist. Asbestos Litig., 14 F.3d 726, 730 (2d Cir.1993). Courts evaluating Rule 12(b)(1) motions "may resolve the disputed jurisdictional fact issues by reference to evidence outside the pleadings, such as affidavits." Zappia Middle East Constr. Co. Ltd. v. Emirate of Abu Dhabi, 215 F.3d 247, 253 (2d Cir.2000).

**B.    Discussion**

    1.    Standing

In its Memorandum in Support, A.G. Edwards asserts that Desia does not have

9

standing on two separate bases. First, A.G. Edwards argues that, to the extent Desia claims that A.G. Edwards breached a contractual duty to Bess with respect to the annuities, Desia has no standing because the annuity contracts were formed between Bess and GE. A.G. Edwards, then, could not have breached a contractual duty to Bess with respect to the disputed annuities because it was not a party to those contracts. Second, to the extent that A.G. Edwards owed a separate contractual duties to Bess, A.G. Edwards claims that these duties arose from the contracts entered into by Bess and A.G. Edwards when Bess opened her securities accounts at A.G. Edwards. Desia, in A.G. Edwards' view, was neither a party nor an intended beneficiary of those contracts.

In Desia's Opposition, she directly contests A.G. Edwards' standing arguments by asserting that "the very nature of an annuity contract's beneficiary designation is to impose a direct obligation upon the company issuing the subject contract to the third-party beneficiary." Pl. Opp. at 3. Thus, because the Amended Complaint pleads that the Barbara Bess Trust was an express third-party beneficiary annuity contracts, Desia maintains that she has standing to assert a breach of contract claim against A.G. Edwards. Id.

Desia then indirectly presses her standing in the portion of her brief which argues that she has stated a claim for relief under Rule 12(b)(6).[2] As Desia frames the argument, "when James Stewart completed the change of beneficiaries of the Annuity

---

[2]Though Desia only argues that this claim is "[r]elated" to her standing argument, Pl. Opp. at 6, the court will treat this assertion as an independent argument for standing. This will allow for a more complete analysis of Desia's standing claim.

Contracts by designating the Barbara Bess Trust as the new third-party beneficiary, his duty to adequately fulfill his professional obligations extended to the Barbara Bess Trust as well." Pl. Opp. at 6 (citing Data General Corp. Inc. v. Citizens Nat'l Bank of Fairfield, 502 F.Supp. 776 (D. Conn. 1980). Desia then asserts that she had every right to bring suit as a third party beneficiary when Stewart allegedly violated this obligation by causing GE to remove the Barbara Bess Trust as a beneficiary of the annuity.

Under Connecticut law, when determining whether a plaintiff can maintain a lawsuit as a third-party beneficiary, "the final test is whether the intent of the parties to the contract was that the promisor should assume a direct obligation to the third party." Data General Corp, 502 F.Supp. at 785 (citing Colonial Discount Co. v. Avon Motors, Inc., 137 Conn. 196, 200-02 (1950)). As to Desia's first argument that her standing derives from the annuity contracts' beneficiary designation, the court concludes that this argument lacks merit. GE is the only entity that could have a direct obligation to Desia because GE was the only party to the annuity contract with Bess. The court can identify no basis in law for Desia's proposition that A.G. Edwards owes a duty to her as a third party beneficiary under a contract to which A.G. Edwards was not a party.

Desia stands on firmer ground with her second contention that she has standing as a third-party beneficiary of the agreement formed between Bess and A.G. Edwards after Stewart, acting as an agent of A.G. Edwards, completed the change of beneficiary requests for Bess. Clearly, when Stewart and Bess agreed that Stewart would change the relevant beneficiary forms, they intended Desia, vis-a-vis the Barbara Bess Trust, to benefit from that agreement. If Stewart's obligations to the Barbara Bess Trust

11

extended beyond the initial change of beneficiary to the Barbara Bess Trust, as Desia contends, it seems that Desia would be a third-party beneficiary of that agreement as well. Therefore, the court finds that Desia has standing to assert her claim.

    2.    <u>Stating a Claim for Relief</u>

While the court finds that Desia would be a third-party beneficiary of an ongoing contract between A.G. Edwards and Bess, the more difficult issue is whether Desia could prove a set of facts establishing that such a contract actually existed. The problem with Desia's position is that she makes no claim that Stewart improperly executed the initial change of beneficiary forms. Instead, Desia seeks relief based on the fact that Stewart, along with Peter J. Oster, another A.G. Edwards agent, submitted affidavits which convinced GE to disburse the proceeds of the annuities to Bennett and Bess.[3] As Stewart and Oster's actions occurred after the initial change of beneficiaries, Desia must legitimately assert that the agreement between A.G. Edwards and Bess survived the execution of the beneficiary change.

The Second Circuit has generally declined to find that brokers have any ongoing responsibilities to a client beyond the completion of those activities for which the broker was retained. See <u>De Kwiatkowski v. Bear, Stearns & Co., Inc.</u>, 306 F.3d 1293, 1302 (2d Cir. 2002) ("It is uncontested that a broker ordinarily has not duty to monitor a nondiscretionary account, or to give ongoing advice to such a customer on an ongoing basis."); <u>see also</u> <u>Press v. Chemical Investment Corp.</u>, 166 F.3d 529, 536 (2d Cir. 1999)

---

[3] Desia admits that she did not plead Stewart and Oster's role in reversing the beneficiary forms in her Amended Complaint. Pl. Opp. at 7.

12

(finding that, under New York law, "[t]he cases that have recognized the fiduciary relationship as evolving simply from the broker-client relationship have limited the scope of the fiduciary duty to the narrow task of consummating the transaction requested.") Indeed, "[t]he broker's duties ordinarily end after each transaction is done, and thus do not include a duty to offer unsolicited information, advice, or warnings concerning the customer's investments." De Kwiatkowski, 306 F.3d at 1302. Still, "a relationship of trust and confidence [exists] between a broker and a customer with respect to those matters that have been entrusted to the broker." United States v. Santoro, 302 F.3d 76, 80 (2d Cir. 2002). This precedent suggests that an ongoing relationship may exist between a broker and client upon a proper set of facts.

Relying upon Data General, Desia essentially contends that cases such as De Kwiatkowski and Press Corp. are inapposite because she is not claiming that A.G. Edwards had an ongoing duty to advise Bess with respect to the annuity contracts. Pl. Opp. at 6 (citing Data General, 572 F.Supp. 776). As previously discussed, Desia asserts instead that A.G. Edwards had a contractual obligation "to assist and aid that the proceeds of the Annuity Contracts be disbursed to the lawful beneficiary at the time of Decedent's death as required by the Annuity Contracts." First Amended Complaint at ¶¶ 19-22. The court agrees with Desia to the extent that it also does not find De Kwiatkowski and Press Corp. particularly helpful in resolving this issue. However, the court does not find that Data General supports Desia's contention.

In Data General, the district court dealt with a claim that a bank breached its agreement under a letter of credit to honor a beneficiary's request for payment after the

beneficiary had met its obligations pursuant to a contract with a separate party. Data General, 572 F.Supp. at 778-79. The beneficiary, Data General, had agreed to sell computer equipment to B.B.S. Systems, Inc. Id. at 778. The two parties then negotiated with the defendant, the Citizens Bank of Fairfield, for the bank to issue a letter of credit in which Data General would be the beneficiary. Id. Such an arrangement is commonly used "to provide assurance to the selling party of prompt payment upon presentation of documents, thereby substituting the credit of the bank for that of the buyer." Id. at 780. In Data General's case, however, the letter of credit did not serve this purpose. Rather, the bank refused to pay Data General the agreed upon price for the equipment after Data General submitted documentation demonstrating compliance with the conditions of its arrangement with B.B.S. Systems. Id. at 779.

In finding that the bank breached its obligations under the letter of credit, the court opined that letters of credit serve basically the same purpose as third-party beneficiary contracts. Id. at 785. Applying this logic, it stated that "the issuing bank is the promisor and the customer is the promisee; the very nature of a letter of credit imposes a direct obligation upon the issuing bank, so that the intent to benefit the beneficiary is clear. . . ." Id. 785.

Desia argues that A.G. Edwards' obligations to Bess are "much like a letter of credit," Pl. Opp. at 3; however, the court cannot discern how Data General supports the proposition that A.G. Edwards had an ongoing contractual duty to Bess and/or the Trust. Data General involved a discrete and clearly identified contractual duty owed by a bank to a beneficiary. There could be no finding that there was anything "ongoing"

about those duties because the bank never fulfilled them in the first instance.

Under the court's view of Data General, Desia has not identified a legal basis upon which to conclude that there was an ongoing contractual relationship between A.G. Edwards and Bess. Given the Second Circuit's decision in Santoro, however, the court is unwilling to conclude on a motion to dismiss that Desia could not prove a set of facts establishing that an ongoing relationship did exist. The court therefore cannot rule as a matter of law that Desia does not state a claim for relief. A.G. Edwards' Motion to Dismiss (Doc. No. 78) is denied.[4]

## IV. CONCLUSION

For the foregoing reasons, Bennett and Palozzi's Motion to Dismiss (Doc. No. 59), Saviano's Motion to Dismiss (Doc. No. 93), and A.G. Edwards' Motion to Dismiss (Doc. No. 78) are DENIED. .

**SO ORDERED.**

Dated this 26th day of March, at Bridgeport, Connecticut.

          /s/ Janet C. Hall
          Janet C. Hall
          United States District Judge

---

[4]In its Reply, A.G. Edwards asserts that Desia is without standing because, according to Trust Agreement, the Trust terminated upon Bess' death. A.G. Edwards Reply at 8 (citing Trust Agreement at 7). A.G. Edwards cites no legal authority for this claim. As such, the court is unwilling to find that the language of the Trust Agreement disposes of Desia's claim.

15